UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NAHID GHULAM DASTAGIR,<br><br>Plaintiff,<br><br>v.<br><br>ANTONY BLINKEN[1], *in his official capacity as U.S. Secretary of State, et al.*,<br><br>Defendants. | Case No. 1:20-cv-02286 (TNM) |

**MEMORANDUM OPINION**

Nahid Ghulam Dastagir wants her foreign national husband to join her in the United States. She filed a visa application on his behalf five years ago, and he received an interview with the U.S. embassy in Moscow ("Moscow Embassy") in 2018. The application has since languished in "administrative processing" awaiting adjudication. Frustrated, Dastagir sues various federal officials (collectively, the "Government"). She seeks an order compelling the Government to act on the application. The Government moves to dismiss the petition and Dastagir seeks partial summary judgment. Because there has been no *unreasonable* delay with Dastagir's visa application, the Court will grant the Government's motion.

**I.**

A U.S. citizen seeking to bring a foreign national spouse to the United States must file a Form I-130—a Petition for Alien Relative—with the United States Citizenship and Immigration Services ("USCIS"). *See* 8 U.S.C. § 1154; 8 C.F.R. § 204.1(a)(1). If USCIS approves the

---

[1] Under Rule 25(d) of the Federal Rules of Civil Procedure, Antony J. Blinken substitutes for Michael R. Pompeo as Defendant in this suit.

petition, it sends the application to the State Department's processing center. *See* 8 C.F.R. § 204.2(a)(3). The foreign spouse then submits another application and appears for an interview at the embassy with jurisdiction over the foreign spouse's residence. 22 C.F.R. § 42.62. After the interview, "the consular office must [either] issue [or] refuse the visa." *Id.* § 42.81(a).

In January 2016, U.S. citizen Dastagir filed a Form I-130 on behalf of her husband, who apparently lives in Russia. Pet. for Writ of Mandamus ("Pet.") ¶¶ 5, 13, ECF No. 1.[2] USCIS approved the application the same year. *Id.* ¶ 12. A consular officer at the Moscow Embassy then interviewed Dastagir's husband in March 2018. *Id.* ¶ 14. The officer allegedly informed Dastagir's husband that the visa application was being placed in "administrative processing." *Id.* ¶ 15. And it has remained there since. *Id.* ¶ 16. Meanwhile, a consular officer has re-interviewed Dastagir's husband. *See* Defs.' Mot. Extension of Time at 1, ECF No. 6. Dastagir claims that the Government's "failure to adjudicate this visa application has had a profound and negative impact on the lives of [her] and her husband." Pet. ¶ 17.

In March 2020, the State Department suspended visa services in all U.S. embassies and consulates around the world in response to the COVID-19 pandemic.[3] *See* U.S. Dep't of State, Bureau of Consular Affairs, *Important Announcement on H2 Visas* (Mar. 26, 2020), https://travel.state.gov/content/travel/en/News/visas-news/important-announcement-on-h2-visas.html. A "phased resumption of visa services" started four months later on a post-by-post basis as "local conditions and resources allow[ed]." U.S. Dep't of State, Bureau of Consular

---

[2] All page citations refer to the page numbers that the CM/ECF system generates.

[3] The Court takes judicial notice of information posted on official government websites without transforming the Government's motion into one for summary judgment. *Accord Pharm. Research & Mfrs. of Am. v. U.S. Dep't of Health & Human Servs.*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014) ("Courts in this jurisdiction have frequently taken judicial notice of information posted on official public websites of government agencies.").

Affairs, *Suspension of Routine Visa Servs.* (July 22, 2020),

https://travel.state.gov/content/travel/en/News/visas-news/suspension-of-routine-visa-services.html. Visa services are currently suspended in Russia over a hiring ban imposed by the Russian government. *See* U.S. Embassy & Consulates in Russia, https://ru.usembassy.gov/message-to-u-s-citizens-u-s-mission-russia-reduction-of-consular-services/. Right now, the Moscow Embassy can only process immigrant visas in "life-or-death emergencies" or "age-out cases." *See* U.S. Embassy & Consulates in Russia, https://ru.usembassy.gov/visas/. The State Department is "currently making arrangements for alternate processing locations for immigrant visa applicants who do not meet these criteria." *Id.*

Dastagir petitioned for writ of mandamus seeking to compel the Government to act on her visa application. She sues under the Administrative Procedure Act ("APA") and Mandamus Act, claiming that the Government is "unlawfully withholding or unreasonably delaying action on [her] husband's visa application." Pet. ¶ 18; *see also id.* ¶¶ 18–34. She also raises a claim involving the Controlled Application Review and Resolution Program ("CARRP")—an internal policy used to "investigate and adjudicate applications deemed to present potential 'national security concerns.'" *Id.* ¶ 37. Dastagir alleges that "on information and belief" the Government is "intentionally delaying this immigration case because of an application of" CARRP. *Id.* ¶ 39.

The Government moves to dismiss the petition. And Dastagir seeks summary judgment on her APA and Mandamus Act claims. Both motions are ripe for disposition.[4]

---

[4] The Court has subject matter jurisdiction under 28 U.S.C. § 1331. The Court denies Dastagir's request for oral argument on her motion because one is unnecessary. *See* LCvR 7(f).

**II.**

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In considering a motion to dismiss, the Court "treat[s] the complaint's factual allegations as true and must grant the plaintiff the benefit of all inferences that can be derived from the facts alleged." *L. Xia v. Tillerson*, 865 F.3d 643, 649 (D.C. Cir. 2017) (cleaned up). The Court, however, need not credit legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. And it can "consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [it] may take judicial notice." *Trudeau v. FTC*, 456 F.3d 178, 183 (D.C. Cir. 2006) (cleaned up).

**III.**

Dastagir's three claims rest on the same theory: that the Government unreasonably delayed adjudication of her husband's visa application. *See* Pet. ¶¶ 18, 28, 32, 39. So the Court starts there. If there was no unreasonable delay, Dastagir's claims fail and the Government's remaining arguments for dismissal fall away.[5]

The APA "imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it 'within a reasonable time,' and authorizes a reviewing court to 'compel agency action unlawfully withheld or unreasonably delayed.'" *Mashpee Wampanoag*

---

[5] Dastagir asks the Court to deny the motion to dismiss because the Government filed no certified list of the contents of the administrative record under Local Civil Rule 7(n)(1). *See* Mem. of P. & A. in Opp'n to Defs.' Mot. Dismiss at 7, ECF No. 15. The Court rejects this argument. This local rule does not apply because, as Dastagir makes clear, she "is challenging the [Government's] inaction on the immigrant visa application." *Id.* at 6. "[I]f any agency fails to act, there is no 'administrative record' for a federal court to review." *Nat'l Law Ctr. on Homeless. & Poverty v. U.S. Dep't of Vets. Affs.*, 842 F. Supp. 2d 127, 130 (D.D.C. 2012).

4

*Tribe Council, Inc. v. Norton*, 336 F.3d 1094, 1099 (D.C. Cir. 2003) (quoting 5 U.S.C. §§ 555(b), 706(1)). The "standard for undue delay under the Mandamus Act . . . is identical to the APA standard." *Kangarloo v. Pompeo*, 480 F. Supp. 3d 134, 142 (D.D.C. 2020).

"There is no per se rule as to how long is too long to wait for agency action." *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004). To evaluate an unreasonable delay claim, courts apply six factors ("*TRAC* Factors"):

1. the time agencies take to make decisions must be governed by a rule of reason;

2. when Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

3. delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

4. the effect of expediting delayed action on agency activities of a higher or competing priority;

5. the nature and extent of the interests prejudiced by delay; and

6. the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*") (cleaned up). These factors are not "ironclad" but offer "useful guidance." *Id.* Addressing an unreasonable delay claim is "ordinarily a complicated and nuanced task requiring consideration of particular facts and circumstances before the court." *Mashpee*, 336 F.3d at 1100.

As we will see, the *TRAC* factors favor the Government here. There is no deadline by which the Government must adjudicate Dastagir's visa application and other courts have found similar wait times not unreasonable. More importantly, granting Dastagir relief would allow her to jump ahead of others with no net benefit to anyone but her. While Dastagir and her family

5

may have experienced hardship during the wait, so too have all applicants whose cases are likewise delayed.

## A.

Courts typically consider *TRAC* factors one and two together. *Accord Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317 (D.D.C. 2020). The first has been called the "most important." *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008). It asks "whether the agency's response time . . . is governed by an identifiable rationale." *Ctr. for Sci. in the Pub. Int. v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014). And the second—whether Congress has provided a timetable—"may supply content for th[e] rule of reason." *TRAC*, 750 F.2d at 80. Both factors strongly favor the Government here.

The parties agree that there is no deadline for the Moscow Embassy to adjudicate Dastagir's visa application. *See* Defs.' Mot. Dismiss ("Defs.' Mot.") at 15, ECF No. 14; Mem. of P. & A. in Opp'n Defs.' Mot. Dismiss ("Pl.'s Opp'n") at 11, ECF No. 15. Instead, "Congress has given the agencies wide discretion in the area of immigration processing." *Slalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017) (noting two-year delays in immigration visa processing "do[] not typically require judicial intervention"). "Decisions regarding the admission of foreign nationals are granted an especially wide degree of deference, as they frequently implicate 'relations with foreign powers, or involve classifications defined in the light of changing political and economic circumstances.'" *Didban v. Pompeo*, 435 F. Supp. 3d 168, 176 (D.D.C. 2020) (quoting *Trump v. Hawaii*, 138 S. Ct. 2392, 2418–19 (2018)).

With no set timeline, the Court looks to case law for guidance. *Accord Sarlak v. Pompeo*, No. 20-0035 (BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020) ("Absent a congressionally supplied yardstick, courts typically turn to case law as a guide."). And "[c]ourts

6

have regularly found that a waiting time like [Dastagir's] is not unreasonable." *Palakuru v. Renaud*, --- F. Supp. 3d ---, 2021 WL 674162, at *5 (D.D.C. Feb. 22, 2021) (citing cases). In *Zandieh v. Pompeo*, for example, another judge in this district held that a 29-month delay was not unreasonable. No. 20-919 (JEB), 2020 WL 4346915, at *5–7 (D.D.C. July 29, 2020); *see also Mirbaha v. Pompeo*, --- F. Supp. 3d ---, 2021 WL 184393, at *5 (D.D.C. Jan. 19, 2021) (holding 27-month delay not unreasonable).

So too here. The Moscow Embassy placed the visa application in "administrative processing" in March 2018. *See* Pet. ¶ 15. So it was pending about 29 months when Dastagir sued. Even if the Court started the clock when Dastagir filed the petition five years ago, "several of this district's courts have noted that delays between three to five years are often not unreasonable." *Mirbaha*, --- F. Supp. 3d ---, 2021 WL 184393, at *5. And the Government has taken some action on the application since 2018, re-interviewing Dastagir last year. *See* Defs.' Mot. Extension of Time at 1. This waiting period stretches but does not exceed the boundaries of reasonableness under the case law in this district.

More, whether a rule of reason exists "cannot be decided in the abstract." *Mashpee*, 336 F.3d at 1102. It is highly relevant that the Moscow Embassy closed during some of this waiting period due to COVID-19. U.S. Dep't of State, Bureau of Consular Affairs, *Important Announcement on H2 Visas* (Mar. 26, 2020), https://travel.state.gov/content/travel/en/News/visas-news/important-announcement-on-h2-visas.html. And now, the Moscow Embassy can process only a "very limited number of immigrant visa applications" in "life-or-death emergencies, and age-out cases" because it can no longer employ foreign nationals in any capacity. U.S. Embassy & Consulates in Russia, *Visas*, https://ru.usembassy.gov/visas/. Issues like a pandemic and local government restrictions are out

of the control of the Government and are justifications for delay that the Court is ill-equipped to second guess. These circumstances offer sufficient "rhyme [and] reason" to explain the Government's response time. *Ctr. for Sci. in the Pub. Int.*, 74 F. Supp. 3d at 300.

Dastagir agrees that "there is no statutory or regulatory timeframe" that applies to her visa application. Pl.'s Opp'n at 11. But she cites 8 U.S.C. § 1571(b), which says that "[i]t is the sense of Congress that the processing of any immigration benefit application should be completed not later than 180 days after the initial filing of the application." Dastagir notes that "[s]ignificantly more than 180 days have passed since [her] initial visa application." Pl.'s Opp'n at 11.

True. But "[s]everal courts, including the D.C. Circuit, have recognized that a sense of Congress resolution is not law." *Palakuru*, --- F. Supp. 3d ---, 2021 WL 674162, at *4 (citing cases). "The Court is inclined to agree with the Government that the precatory 'sense of congress' language in 8 U.S.C. § 1571(b) is best interpreted as nonbinding." *Id.* Even so, 8 U.S.C. § 1571(b) would not change the Court's rule-of-reason analysis. "And the *TRAC* factors on the whole—particularly the first factor and the fourth factor (discussed below)—would still decisively favor the Government." *Id.*

Dastagir also tries to distinguish her case. She argues that other decisions rejecting unreasonable delay challenges are different because they involved "complex, fact-intensive determinations" not relevant here. Pl.'s Opp'n at 11. And "[a]djudicating immigrant visa applications is much more straightforward than these adjudications." *Id.* at 12. She cites a Notice of Proposed Rulemaking from USCIS, which estimates that a different visa application, the Form I-485, takes 1.63 hours to adjudicate. *Id.* According to Dastagir, "it is reasonable to

8

conclude that an immigrant visa application should take approximately the same amount of time" because the "eligibility requirements are very similar." *Id.* The Court is unconvinced.

For starters, USCIS is no longer involved with Dastagir's application. *See* Pet. ¶ 1 ("Defendant USCIS already approved the Form I-130 petition[.]"). So its estimates are not the appropriate goalpost to use. As Dastagir acknowledges, the State Department—the agency responsible for adjudicating the application—"has not published similar statistics." Pl.'s Opp'n at 12.

Even if the Court assumed it took only 1.63 hours to adjudicate her visa application, that does not help Dastagir. The Government does not argue that the application is complex or time-consuming to justify Dastagir's wait time. It instead notes the "volume of visa applicants, the impacts of COVID-19, and now suspension of visa services due to local conditions" at the Moscow Embassy. Defs.' Combined Reply in Supp. Mot. Dismiss at 9, ECF No. 17. It is irrelevant then that Dastagir's case is "straightforward." Even something as simple as buying a concert ticket can take hours if hundreds of other fans are ahead of you in line.

Dastagir next challenges the Government's reliance on its COVID-19 precautions to defend the delay. *See* Pl.'s Opp'n at 13. She points out that her husband's last interview occurred during the pandemic, which she claims "is at odds with [the Government's] explanation." *Id.*

The Court disagrees. The Government does not represent that *no* visa processing has occurred. Recall that the Government started a phased resumption of visa services around July 2020—a few months before her husband's second interview. *See* U.S. Dep't of State, Bureau of Consular Affairs, *Suspension of Routine Visa Servs.* (July 22, 2020), https://travel.state.gov/content/travel/en/News/visas-news/suspension-of-routine-visa-

services.html. The issue, though, is the slowdown that resulted from these COVID-19 precautions and local restrictions currently in place at the Moscow Embassy. It is not inconsistent for the Government to interview Dastagir's husband and claim a backlog of cases.

The Court thus finds that the first and second *TRAC* factors favor the Government.

**B.**

Next, the Court considers the fourth *TRAC* factor, or "the effect of expediting delayed action on agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. "This factor carries the greatest weight in many cases[.]" *Milligan*, 502 F. Supp. at 319. Under this factor, the Court may deny relief "where a judicial order putting [Dastagir] at the head of the queue [would] simply move[] all others back one space and produce[] no net gain." *Mashpee*, 336 F.3d at 1100 (cleaned up).

Dastagir asks for just that. She seeks an order compelling the Government to adjudicate her husband's visa application within 15 days "or as soon as reasonably possible." Pet. at 12; *see also id.* ¶¶ 18, 34. This relief, though, would permit Dastagir to jump the line and "simply move[] all others back one space and produce[] no net gain." *Mashpee*, 336 F.3d at 1100 (cleaned up). "While the effect of an individual case would be minimal, an accumulation of such individual cases being pushed by judicial fiat to the front of the line would erode the ability of agencies to determine their priorities." *Tate v. Pompeo*, --- F. Supp. 3d ---, 2021 WL 148394, at *11 (D.D.C. Jan. 16, 2021). Federal agencies, not the Court, are best positioned to manage the backlog of immigration cases. *Cf. In re Barr Lab'ys, Inc.*, 930 F.2d 72, 76 (D.C. Cir. 1991) ("Such budget flexibility as Congress has allowed is not for us to hijack.").

Dastagir says that asking the Government "to issue a visa within three years is not unreasonable and would have a minimal impact on other agency activities." Pl.'s Opp'n at 13.

10

But Dastagir misses the forest for the trees.  An order requiring adjudication of her visa application necessarily reshuffles the queue of other applicants also waiting for adjudication of their cases.  Dastagir offers no reason why she should have "super-priority" over them.  *In re Barr Laby's*, 930 F.2d at 75.  There is no suggestion that the Government has treated her differently than other applicants nor are there "unique considerations" that warrant line-jumping.  *Accord Uranga v. U.S. Citizenship & Immigr. Servs.*, 490 F. Supp. 3d 86, 105 (D.D.C. 2020) ("[I]t is notable that plaintiff does not point to any unique considerations that warrant an expedited review of his [visa] petition; nor does he contend that the agency has treated him unfairly, or differently[.]").  The Court "ha[s] no basis for reordering agency priorities."  *In re Barr Lab'ys*, 930 F.2d at 76.

This is especially so given the local restrictions at the Moscow Embassy.  The Moscow Embassy can only process "life-or-death emergencies" or "age-out cases."  U.S. Embassy & Consulates in Russia, *Visas*, https://ru.usembassy.gov/visas/.  It has to "mak[e] arrangements for alternate processing locations for immigrant visa applicants who do not meet these criteria."  *Id.*  The State Department and Moscow Embassy are "in a unique—and authoritative—position" to respond to these circumstances.  *In re Barr Lab'ys*, 930 F.2d at 76.  The Court need not interfere.

This factor alone could doom Dastagir's claims.  *See Mashpee*, 336 F.3d at 1100.  The remaining *TRAC* factors, however, also support dismissal.

### C.

The Court looks next at *TRAC* factors three and five, or "the interests prejudiced by delay" including how delays affect "human health and welfare."  *TRAC*, 750 F.2d at 80.  Dastagir alleges that the delay "has had a profound and negative impact on the lives of [her] and

11

her husband." Pet. ¶ 17; *see also id.* ¶ 1 ("[Dastagir] continues to suffer due to [her] ongoing separation from her husband, with no apparent end in sight.").

The Court sympathizes with Dastagir and her family's difficulties. But she is not alone. "While the Court does not doubt that [Dastagir] has an interest in prompt adjudication, so too do many others facing similar circumstances." *Palakuru*, --- F. Supp. 3d ---, 2021 WL 674162, at *6. Catapulting Dastagir to the front of the line "direct[s] resources away from the adjudications that the State Department has identified as more urgent." Defs.' Mot. at 20. Agencies, not this Court, are in the best position to "allocate [their] resources in the optimal way." *In re Barr Lab'ys*, 930 F.2d at 76. These factors do not favor Dastagir.

Even if they did, they "would weigh only slightly in support of finding an unreasonable delay." *Palakuru*, --- F. Supp. 3d ---, 2021 WL 674162, at *6. They do not "overcome the other factors that weigh strongly in the Government's favor." *Id.*

### D.

Finally, the sixth *TRAC* factor is neutral. It reminds courts that they "need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'" *TRAC*, 750 F.2d at 80. Dastagir admits that she asserts no bad faith here.[6] Pl.'s Opp'n at 15.

---

[6] The Court does not reach two of the Government's arguments. First, the Government invokes the consular nonreviewability doctrine. *See* Defs.' Mot. at 11–14. This doctrine "shields a consular official's decision to issue or withhold a visa from judicial review unless Congress says otherwise" or if one of "two narrow circumstances" applies. *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021). But the Government offered no rebuttal to Dastagir's assertion that the doctrine does not apply because she "challenges inaction, as opposed to a decision taken within the consul's discretion." Pl.'s Opp'n at 9 (quoting *Moghaddam v. Pompeo*, 424 F. Supp. 3d 104, 114 (D.D.C. 2020) (cleaned up)). In any event, "[d]ismissal based on consular nonreviewability . . . is a merits disposition under Federal Rule of Civil Procedure 12(b)(6)." *Baan Rao Thai Rest.*, 985 F.3d at 1027. So it is unnecessary to resolve this question because the Court will dismiss the petition for failure to state a claim of unreasonable delay. For

* * *

Dastagir's unreasonable delay claims fail under the *TRAC* factors. *Accord Didban*, 435 F. Supp. 3d at 177 ("Because Plaintiffs have failed to establish an undue delay, their claim for mandamus relief under 28 U.S.C. § 1361 necessarily fails as well.").[7] The Court does not doubt that the waiting time has impacted Dastagir and her family. But "delays stemming from resource-allocation decisions simply do not lend themselves to judicial reordering of agency priorities." *Milligan*, 502 F. Supp. 3d at 319 (cleaned up). And Dastagir offers no basis for judicial line-cutting those also waiting their turn.

### IV.

For these reasons, the Court will grant Defendants' motion to dismiss and deny Plaintiff's motion for partial summary judgment. A separate Order will issue.

Dated: July 9, 2021

TREVOR N. McFADDEN, U.S.D.J.

---

the same reason, the Court need not address the Government's argument that Dastagir improperly named some federal officials as Defendants. *See* Defs.' Mot. at 9–11.

[7] Dastagir's CARRP claim also hinges on unreasonable delay and thus fails here. *See* Pet. ¶ 39. Even if it did not, it would not survive because Dastagir did not "set forth any factual allegations to support" it. *Ghadami v. U.S. Dep't of Homeland Sec.*, No. 19-00397 (ABJ), 2020 WL 1308376, at *6 (D.D.C. Mar. 19, 2020) (dismissing similar claim that "on information and belief defendants [were] intentionally delaying" the visa application "pursuant to the CARRP program" (cleaned up)).